UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| SEAN ALEX ROUNDTREE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 8-1-P-S |
| | ) |
| FRYEBURG ACADEMY, *et al.*, | ) |
| | ) |
| Defendant. | ) |

**RECOMMENDED DECISION**

Sean Roundtree, a former substitute teacher at Fryeburg Academy, has brought a *pro se* lawsuit against the Academy, its Board of Trustees, Assistant Headmaster David B. Sturdevant, the Fryeburg Academy Teachers Association, James St. Pierre, a teacher and member of the association, Headmaster Daniel G. Lee, Jr., and Jane and John Doe of the Board of Trustees alleging racial discrimination in connection with his employment at the Academy. He began this lawsuit by filing a verified complaint affirmed under penalty of perjury (Doc. No. 1). The Academy defendants have filed a motion to dismiss (Doc. No. 10), as have the Association and St. Pierre (Doc. No. 14). Shortly thereafter, Roundtree filed a motion for summary judgment (Doc. No. 17). These three motions are now fully briefed.[1] I recommend the court deny summary judgment to Roundtree and grant the Association's and St. Pierre's motion to dismiss. I further recommend that the court grant in part the Academy defendants' motion to dismiss,

---

[1] Roundtree has filed two subsequent motions for summary judgment (Doc. Nos. 23 & 39). In turn, those pleadings have provoked a cross-motion for summary judgment by the Academy defendants (Doc. No. 37) and a motion to strike the motion for summary judgment (Doc. No. 39), again filed by the Academy defendants. I have ordered this entire second round of motions stayed, as not all response and reply deadlines have yet expired. No further briefing by either side is allowed until the first round of motions has been decided. It may well be that after the court finally rules on these three motions, the newer motions will be moot. Roundtree's additional summary judgment motions suffer from the same failures as the motion discussed in this recommended decision.

1

dismissing all claims against these defendants but for the claim brought pursuant 42 U.S.C. § 1981.

## The *Factual* Allegations of the Verified Complaint

Sean Alex Roundtree currently resides in Arizona. (Cmpl. ¶ 3.) The events giving rise to this lawsuit occurred in connection with Roundtree's former employment at Fryeburg Academy. (Id. ¶ 6.) The conduct complained of started on September 12, 2002, and continued through December 31, 2007. (Id. ¶ 7.) Roundtree filed a Statement of Facts with the Maine Human Rights Commission on February 5, 2007. (Id. ¶ 9.) He filed a similar document with the Equal Employment Opportunity Commission on July 6, 2007. (Id. ¶ 10.) Notice of Right to Sue was received on October 7, 2007. (Id. ¶ 11.) Roundtree believes reinstatement to his former position would be highly impracticable and therefore requests front pay. (Id. ¶ 14.)

Fryeburg Academy is a public boarding high school (grades 9-12) located within District Three of Oxford County, Maine. Its employment decisions are made by the Fryeburg Academy Board of Trustees. The day to day operations are handled by Headmaster Daniel G. Lee, Jr. and Assistant Headmaster David B. Sturdevant. James St. Pierre is an English teacher at the Academy and also serves as the union representative for the Fryeburg Academy Teachers Association. (Id. ¶ 15.) There is a collective bargaining agreement and a salary schedule in effect between the Academy and the Association. (Id. ¶ 16.)

In September of 2002, Roundtree, who is African-American, was the boyfriend of a newly hired Academy teacher and he assisted her with her move to Fryeburg. After Roundtree had been in the community for some time he was approached, unsolicited, by Sturdevant, who offered him the position of full-time teacher: Permanent Substitute Teacher/Substitute Coordinator. (Id. ¶ 17.) Sturdevant offered the contract on September 12, 2002, for the 2002-

2003 school year, with an annual salary of $18,200.00, "not including stipends, and you will enjoy all the customary benefits package of a full-time employee."  (Id. ¶ 18.)  On June 12, 2003, Roundtree was offered a similar contract for the 2003-2004 school year at an annual salary of $24,500.00.  The second contract contained the added duties of winter and spring coaching responsibilities and residing in a dormitory with full dormitory responsibilities.  (Id. ¶ 19.)  Roundtree received documentation from the Academy including a Teachers Information Sheet, a Memorandum, a Maine State Retirement System Application, and a Maine State Retirement Beneficiary Designation, copies of which are attached as exhibits to the complaint.  (Id. ¶ 20.)  Sturdevant verbally instructed Roundtree to take on the role of class advisor for six students.  (Id. ¶ 21.)  He was also verbally instructed by Sturdevant not to attend the weekly Fryeburg Academy Teachers Association meetings held in the school cafeteria.  (Id. ¶ 22.)

   In January 2004, teaching peers informed Roundtree that as a full-time teacher he was eligible for $1,500.00 in education benefits per academic year.  (Id. ¶ 23.)  Roundtree spoke with Sturdevant and he confirmed that Roundtree was entitled to $3,000.00 in benefits for both employment years.  (Id. ¶ 24.)  Shortly thereafter Roundtree submitted a request for Sturdevant to pay for a Personal Training Certification and an exam was set for April 3, 2004.  Roundtree spoke with Sturdevant about attending coaching clinics and obtaining other sports certifications.  (Id. ¶ 25.)  Following Roundtree's request for benefits, a co-worker, John Atwood, intensified unspecified harassment against Roundtree, which included "ridicule, mockery and stereotypical ph[r]ases," all of which were unwelcome and offensive to Roundtree.  (Id. ¶ 26.)  Roundtree tried to mitigate these circumstances but Atwood continued to behave in an "Archie Bunker" manner.  (Id. ¶ 27.)  When told of this behavior, Sturdevant said it was playful and ordinary and took no corrective action.  (Id. ¶ 28.)

In March 2004, Roundtree was involved in a traffic accident that prevented him from traveling to the exam scheduled for April 3, 2004. Roundtree contacted the certifying commission to transfer the exam to a new date. (Id. ¶ 29.) There was a $75.00 transfer fee that Roundtree told Sturdevant about and Sturdevant said he would take care of it. (Id. ¶ 30.) Shortly after that exchange, Roundtree was verbally assaulted by Atwood. (Id. ¶ 31.) Roundtree told Sturdevant that he had taken an advisee into the teachers' lounge for a brief unscheduled meeting to discuss course work for the approaching June graduation. (Id. ¶ 32.) As Roundtree and the advisee were leaving the lounge, Atwood jumped up and screamed, "You need to get out of here! Who do you think you are? Why don't you leave here . . . get out of here?" (Id. ¶ 33.) When told about the incident Sturdevant suggested that maybe Roundtree should not have been in the lounge with his advisee. (Id. ¶ 34.) Sturdevant took no corrective action against Atwood. (Id. ¶ 35.) Later that same week a long-time faculty member, Scott Cote-Crosskill, made a clear and deliberate thumb sucking gesture toward Roundtree as they passed in the hall. (Id. ¶ 36.)

Roundtree's duties as a class advisor were not part of his job description. All the other full-time Fryeburg Academy teachers who are class advisors are paid according to D3, SS (an exhibit attached to the complaint). The lounge was considered Roundtree's office and offered substitutes and teachers a convenient way to locate him. He regularly held scheduled advisee meetings in the lounge. (Id. ¶ 37.)

On May 4, 2004, Roundtree submitted a request for payment to Sturdevant for a coaching clinic in Allentown, Pennsylvania, and submitted an itinerary that included flight, hotel, and a rental vehicle. (Id. ¶ 38.) Roundtree concluded his duties at Fryeburg Academy on June 13, 2004, and with no contract for the 2004-2005 school year he vacated his campus apartment. (Id. ¶ 39.) On June 18, 2004, Roundtree arrived at Laval Airport in Montreal in order to fly to the

4

Allentown clinic and he learned that Sturdevant had failed to pay for the itinerary as agreed. Roundtree was humiliated by this turn of events. (Id. ¶ 40.) When he attempted to contact Sturdevant by telephone, e-mail, and regular mail there was no response. (Id. ¶ 41.)

Roundtree sent e-mail requests for a copy of the collective bargaining agreement to St. Pierre on June 24 and 26, 2004. (Id. ¶ 42.) St. Pierre responded by asking whether Roundtree wanted the 30-page version or the one-page, signed version. (Id. ¶ 43.) When Roundtree clarified that he wanted the 30-page version, St. Pierre told him he no longer had the 30-page copy but suggested to him that Gerry Turner might be able to provide him one. (Id. ¶ 44.) Turner is the headmaster's secretary and she denied Roundtree's request for copies. At no time during his employment were copies of the collective bargaining agreement or salary schedule available for his review. (Id. ¶ 45.) Sturdevant sent Roundtree an e-mail (attached to the complaint as Exhibit T) stating that Roundtree had received letters of appointment, not contracts. (Id. ¶ 46.) St. Pierre said all Fryeburg Academy teachers sign a one-page contract. (Id. ¶ 47.) Roundtree had been required to pay into the Maine State Retirement System in the amount of $3,497.90 for 2002 and 2003. (Id. ¶ 49.)

Roundtree ultimately learned that the $75.00 transfer fee had never been paid for him to take the exam for the certification. (Id. ¶ 50.) Sturdevant acknowledged that he agreed to pay for some professional development opportunities for Roundtree. (Id. ¶ 51.) Those items included the test and one seminar. (Id. ¶ 52.) However, Sturdevant lost contact with Roundtree at the end of the school year because Roundtree left the area. (Id. ¶ 53.) Roundtree and Sturdevant never talked on the phone about the issue of benefits, but Roundtree sent inquiries by e-mail and regular mail requesting payment of benefits. (Id. ¶¶ 55-57.) Ultimately, in a 2006 e-mail, Sturdevant told Roundtree that Fryeburg Academy did not owe him anything in the way of

5

course or conference payments.  (Id. ¶ 58.)  However, Sturdevant offered to pay Roundtree $250.00 as a gesture of good will and to put the matter to rest.  (Id. ¶ 59.)  Sturdevant stated it was not the school's practice to pay for courses for people who were not going to be working at the school the next year.  (Id. ¶ 61.)

Roundtree has a bachelor of science degree in advertising from Northern Arizona University and, according to the salary schedule, a step "0" teacher with a degree is paid $22,578.00 and a step "1" teacher with a degree is paid $24,726.00.  (Id. ¶¶ 65-66.)  Roundtree alleges that he should have been paid at this salary level rather than the salary level he received.  (Id.)  Joy Milo, a white female, was hired as a full-time permanent substitute during the 2003 academic year.  Sturdevant took care of Milo's pay slips even though Roundtree controlled all other substitute pay slips before and after Milo.  (Id. ¶ 70.)  Fryeburg Academy did not offer Roundtree a 2004 contract.  (Id. ¶ 71.)

The EEOC received Roundtree's complaint on July 10, 2007.  (Id. ¶ 73.)  Roundtree alleges a recognizable pattern of egregious racial discrimination, harassment and retaliation, perpetrated by Supervisors and co-workers throughout his two years of employment at Fryeburg and seeks $ 5.2 million in damages.  Id. ¶¶ 6-7 of Section III of the Complaint.

## Motion to Dismiss Standard

Although the complaint is not broken into separate counts based upon differing legal theories of recovery, Roundtree recites in his opening paragraph that his lawsuit alleges a civil rights conspiracy pursuant to 42 U.S.C. § 1981 and violations of Title VII of the Civil Rights Act of 1964, the Equal Pay Act, and the Maine Human Rights Act.  Roundtree also claims his lawsuit is brought pursuant to other unidentified Maine statutory provisions relating to contracts, employment, fraud, civil conspiracy, and conspiracy to commit fraud.

The notice pleading standard of the Federal Rules of Civil Procedure or, more particularly, the standard governing when it is appropriate for a court to infer the presence of unstated facts in order to determine whether a claim for relief has been adequately alleged for purposes of Rule 8(a) and Rule 12(b)(6), has recently been set forth in Bell Atlantic Corporation v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007).  In that case the lower court had held that the pleadings were adequate to state a claim because the defendants had failed to demonstrate that there was "no set of facts" consistent with the allegations that might be discovered in support of a finding of an actual violation of the statutory prohibition.  Id. at 1963; Twombly v. Bell Atl. Corp., 425 F.3d 99, 114 (2d Cir. 2005).  The Supreme Court reversed this determination and concluded that it was time to retire the hackneyed "no set of facts" phrase insofar as it had come to be interpreted by some courts as describing a minimum pleading standard.  Twombly, 127 S. Ct. at 1969 & n.8 (describing what the Court regards as the real meaning of the phrase, as originally used in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  In its place the Court lighted upon "plausibility" as the touchstone for judging inferences that must be drawn in order to credit conclusory allegations.  Id. at 1965, 1970, 1974.  Nothing in Twombly forbids lower courts from drawing inferences or accepting conclusory recitations as true for purposes of a motion to dismiss, so long as the factual content that is supplied in the complaint demonstrates the plausibility of any necessary inferences.  This is in keeping with the holding of Swierkiewicz v. Sorema N.A.Id., 534 U.S. 506 (2002), another significant, recent opinion addressing the notice pleadings standard, in which the Supreme Court held that a plaintiff is not required to plead specific facts supporting each and every element of a prima facie discrimination claim, id. at 513-15, and suggested that a motion for a more definite statement is the more appropriate route for defendants to take if lack of fair notice is their real concern, id. at 514.  The Swierkiewicz

Court flatly observed that, when it comes to judging pleadings, Rule 8(a) requires only that the plaintiff "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," id. at 512 (quoting Conley v. Gibson , 355 U.S. 41, 47 (1957)), and that the "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims," id. Dismissal is warranted under Federal Rule of Civil Procedure 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326-27 (1989) (emphasis added). In this case there are dispositive legal issues that preclude relief under the state and federal employment discrimination statutes aside from the notice pleading rules discussed above.

Three additional pleading rules govern these motions to dismiss. First and foremost, a *pro se* litigant is not subject to rigid pleading standards and his submissions must be reviewed liberally. See Clarke v. Blais, 473 F. Supp. 2d 124, 128 (D. Me. 2007) (citing Hughes v. Rowe, 440 U.S. 5, 9-10 (1980), and noting that an unrepresented plaintiff's complaint is held to "less stringent standards" than a pleading drafted by a lawyer). Second, his civil rights action brought pursuant to 42 U.S.C. § 1981 is not subject to any heightened pleading standard at the motion to dismiss stage. Goodman v. Bowdoin College, 380 F.3d 33, 44 n.18 (1st Cir. 2004). Finally, to the extent Roundtree attempts to plead state law fraud claims, he is subject to a heightened pleading requirement that places the defendants on notice of the particularities of the allegations and allows them to prepare a meaningful response. Sutton v. Culver, 204 F. Supp. 2d 20 (D. Me. 2002).

**Discussion**

    1.  The Claims Against St. Pierre and the Association

The *factual* allegations of Roundtree's complaint, read in the most liberal fashion, allege that James St. Pierre was an English teacher at the Academy and a "union representative." Roundtree asked him for a copy of the teachers' contract and St. Pierre asked whether he wanted the one-page, signed version or the 30-page contract. When Roundtree told him he wanted the 30-page contract St. Pierre said he did not have that version in his possession and referred him to the Headmaster's secretary. In conclusory fashion Roundtree describes this conduct as deliberate concealment of the collective bargaining agreement by St. Pierre and the Association. St. Pierre also alleges, in only the most conclusory fashion without any facts to support the allegation, that St. Pierre conspired with the other defendants to pay Roundtree a lower base salary.

The Fryeburg Academy Teachers Association is mentioned in the complaint only to the extent of St. Pierre's involvement as union representative and in a reference to a remark by Sturdevant to Roundtree, signaling that he was not to attend the weekly meetings of the association in the cafeteria. There is no allegation that the association interfered with Roundtree's contract with the Academy or had anything to do with that relationship. Nor is there any allegation that the association discriminated in any way against Roundtree, such as by denying him membership or refusing to allow him to attend their meetings. An allegation that a member of the association was not able to produce the full 30-page contract for Roundtree and referred him to another party to obtain it is just too slender a reed to state a claim for racial discrimination under 42 U.S.C. § 1981, employment discrimination statutes, or state law. The complaint should be dismissed in its entirety as to St. Pierre and the Association.

2. The Employment Discrimination Statutory Claims against the Academy defendants – Maine Human Rights Act, Title VII and the Equal Pay Act

In order to bring a complaint under the Maine Human Rights Act the plaintiff must commence his lawsuit "not more than 2 years after the act of unlawful discrimination complained of." 5 M.R.S.A. § 4613(2)(C). Here Roundtree is complaining that Fryeburg Academy[2] discriminated against him beginning in 2002 when it hired him at a base salary other than the prevailing wage and continuing through June 2004 when it refused to pay for his transportation and expenses in conjunction with a training program. He says he was hired as a substitute teacher, did the work of a substitute teacher and more, and was not paid at the rate received by others in his position. He also suggests that co-workers may have displayed racial animus toward him. Notably, Roundtree does not allege that he left employment involuntarily or that he was terminated, disciplined, demoted, transferred, or reprimanded by his employer. At the very latest, all of this alleged employment discrimination had already occurred in June 2004 when Roundtree first requested a copy of the collective bargaining agreement to review his claimed rights under that contract. I cannot help but conclude that any claim Roundtree ever held under Maine employment law is now time barred and must be dismissed.

Roundtree's federal claims under Title VII and his state claims under the MHRA are also barred by his failure to timely exhaust them in the administrative forum. Federal law requires a person to file a charge with the Equal Employment Opportunity Commission (EEOC) within 180 days of the alleged discriminatory act as a prerequisite to filing suit. 42 U.S.C. § 2000e-5(e)(1). However, because Maine is a so-called "deferral state," an individual can normally satisfy this requirement by filing a charge with the Maine Human Rights Commission within 300 days after

---

[2] The Academy defendants correctly point out that it is well settled that Title VII and MHRA claims are not sustainable against individuals, providing only a basis for employer liability. Miller v. Hall, 245 F. Supp. 2d 191, 192-93 (D. Me. 2003).

10

the occurrence of an unlawful employment practice.  Id.; Judkins v. Saint Joseph's Coll. of Me., 483 F. Supp. 2d 60, 64 (D. Me. 2007).  A claim under the Maine Human Rights Act is subject to a stricter, six-month limitation on the filing of an administrative charge.  5 M.R.S. § 4611.  Thereafter, the Commission must be afforded a period of time in which to act, at the expiration of which the person pursuing the claim has a window of 90 days in which to bring a civil action in court, if at all.  42 U.S.C. § 2000e-5(f)(1).   The purpose of the charge filing requirement is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation."  Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996).

Roundtree did not file a complaint with the Maine Human Rights Commission until February 5, 2007, well over 300 days after he left his employment and the last act of employment discrimination occurred.   Roundtree says in his complaint that his "anchor claim" is the September 21, 2006, e-mail from Sturdevant wherein it was asserted that Fryeburg Academy did not owe him any money.  (Cmpl. at 16, ¶ 2.)  According to Roundtree, because he filed his charge within 300 days of receiving the 2006 e-mail, he timely pursued administrative relief and his "timely" filing sweeps up all of the prior conduct back to the initial 2002 commencement of employment.  Roundtree's complaint acknowledges that there may indeed be a time bar to his employment discrimination lawsuit, but he tries to breathe life into his claim by what he calls a "continuing violation theory" and by invoking the doctrine of "equitable tolling."  Neither legal theory applies to the facts as alleged in Roundtree's complaint.  It appears from the complaint that Roundtree is complaining of the following discrete forms of employment discrimination: (1) a hostile work environment based on racial animus;  (2) a race-based "equal pay" violation spanning the two school years he worked at Fryeburg Academy;  and (3) racial discrimination by Sturdevant, the immediate supervisor, because of Sturdevant's refusal to pay for his training

11

courses after having promised to do so. The problem with Roundtree's attempt to make the 2006 e-mail his "anchor claim" for a continuing violation theory is that the e-mail correspondence happened more than two years after the voluntary cessation of the employment relationship. Therefore, by definition, the correspondence could not have been a form of *employment* discrimination.  Lever v. Northwestern Univ., 979 F.2d 552, 556 (7th Cir. 1992) ("an employer's refusal to undo a discriminatory decision is not a fresh act of discrimination.")  As for the three discrete forms of employment discrimination set forth in the complaint, they had all occurred and Roundtree knew of them by June 2004. The subsequent effect of that past discriminatory conduct does not restart the clock for filing an EEOC charge.  Ledbetter v. Goodyear Tire & Rubber Co., __ U.S. __, 127 S. Ct. 2162, 2169 (2007).  Thus, Roundtree's claims under Title VII and the MHRA are time barred.

The remaining employment discrimination claim raised by Roundtree is his federal Equal Pay Act (EPA) claim, which he presumably brings pursuant to 29 U.S.C. § 206.  Each discriminatory paycheck Roundtree received would constitute a separate violation of the Equal Pay Act, giving rise to a new cause of action with a new limitation period.  Ledbetter, 127 S. Ct. at 2176;  EEOC v. McCarthy, 768 F.2d 1, 3-4 (1st Cir. 1985).  The statute of limitations for such claims is normally two years and if a cause of action arises from a willful violation it is three years.  29 U.S.C. § 255.  Dismissal based on an affirmative defense afforded by a statute of limitation is appropriate when the facts establishing the defense are clear from the face of the complaint and the complaint fails to recite allegations warranting a different limitation period or equitable estoppel.  Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008).  Roundtree's complaint does not state when he received his last paycheck, but it is clear from the complaint that he concluded his duties June 13, 2004. Even if he did not receive his paycheck

until August 31, 2004 (the terminal date on his contract), the statute of limitations would have begun to run under the EPA not later than September 1, 2004, and the complaint was not filed until January 2, 2008, well past even the three-year statute of limitations.

Roundtree would avoid these consequences by invoking the doctrine of equitable tolling, which is available in certain limited circumstances for employment discrimination cases. However, nothing in Roundtree's allegations rise to the level of supporting a claim that Roundtree was induced or tricked by Fryeburg Academy's misconduct into allowing the deadline to pass.  See O'Donnell v. Vencor Inc., 466 F.3d 1104, 1112 (9th Cir. 2006) (EPA); Steiner v. Henderson, 354 F.3d 432, 436 (6th Cir. 2003) (Title VII).  The sporadic e-mail and written correspondence with Sturdevant and Lee between June 2004 and September 2006, most of which is attached to the complaint as exhibits, does not demonstrate that anyone at Fryeburg Academy did anything to prevent Roundtree from timely pursuing legal claims.  The only other allegation that Roundtree makes is that the school secretary did not provide a copy of the contract between association members and the Academy.  However, the missing 30-page contract has not prevented Roundtree from obtaining information about the salary schedule for other teachers at the school and becoming cognizant of the apparent disparity between what he was paid and what other full-time contract teachers received.  Furthermore, Roundtree knew Turner was going to provide the contract in 2004.  The alleged facts do not support application of equitable tolling.

    3. The State Law Claims Against the Academy defendants – Fraud & Breach of Contract

Roundtree asserts state law fraud and breach of contract claims against the Academy defendants.   Roundtree's complaint does not allege that the Academy breached any of the material terms of either the 2002-2003 contract or the 2003-2004 contract.  Instead, he alleges

that the Academy discriminated against him by not providing him with the same contract that it provided to others. These allegations do not state a breach of contract claim under Maine law.

Under Maine law fraud consists of (1) the making of a false representation; (2) of a material fact; (3) with knowledge or reckless disregard of its falsity; (4) for the purpose of inducing reliance; and (5) where the plaintiff justifiably relies to his detriment. Goodman v. President & Trs. of Bowdoin Coll., 135 F. Supp. 2d 40, 59 (D. Me. 2001). Federal Rule of Civil Procedure 9(b) requires that a party alleging fraud must plead with particularity the circumstances constituting fraud or mistake. This special pleading requirement applies to state law claims filed in federal court. Id. To meet the particularity requirement of the rule, a plaintiff must specify the "time, place, and content of an alleged false representation, but not the circumstances or evidence from which fraudulent intent could be inferred." McGinty v. Beranger Volkswagen, Inc., 633 F.2d 226, 228 (1st Cir. 1980). In this case, the only statements pled with particularity are the statements made by Sturdevant up through the September 2006 e-mail. The one apparent "false" statement relates to the payment of the $75.00 transfer fee, but according to the complaint, even though Sturdevant said he would take care of it and then failed to do so, Roundtree only learned of the failure to pay the transfer fee much later. He has not alleged that he actually attempted to take the course and was rebuffed because the fee had not been paid. Apparently, Roundtree never followed up on taking the course until much later, after he left his employment at the Academy.

Roundtree does allege that he was rebuffed at the Montreal Airport when he went there to fly to the coaching clinic in Allentown. But his complaint alleges that Sturdevant had told him only that he would consider the coaching clinic and that Roundtree merely submitted an *itinerary* to Sturdevant. Nowhere in the complaint does Roundtree allege that he ever received approval

from Sturdevant of this particular itinerary or that he had any other formal authorization for his trip. There simply cannot be justifiable reliance under the circumstances alleged by Roundtree in his complaint based on Sturdevant's statement that he might pay for the coaching clinic.

      4.   The Claim Pursuant to 42 U.S.C. § 1981

At issue is whether Roundtree's complaint adequately alleges the elements of violations of 42 U.S.C. § 1981, which provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . ." 42 U.S.C. § 1981(a). In order to establish a § 1981 violation, a party must demonstrate: (1) purposeful discrimination; (2) that is based on race; (3) in the formation or enforcement of a contract. Dartmouth Review v. Dartmouth Coll., 889 F.2d 13, 17 (1st Cir. 1989); Goodman, 135 F. Supp. 2d at 48.

In this case, Roundtree has alleged a particular type of racial discrimination in the form of pay inequality. Roundtree claims he was paid less than white teachers who worked at the Academy performing the same tasks he performed. Defendants read Roundtree's complaint in an unfairly restrictive fashion when they say he has not alleged he was paid less than members outside his protected class who held the same position of "permanent substitute teacher." (Fryeburg Academy's Mot. to Dismiss at 7, Doc. No. 10.) Fairly read, Roundtree's complaint alleges that he was called a "permanent substitute teacher" while other teachers, including a similarly situated white female teacher who performed job descriptions identical to his, were given different and more favorable contractual status. The Academy defendants argue that the claim should be dismissed based on the absence of an allegation that the Academy "had other permanent substitute teachers on its payroll." (Id.) However, that does not necessarily rule out an inference favorable to Roundtree, which appears to be the exact point of his complaint: that

the Academy subjected him to disparate treatment in his job classification because of his race. Whether he has any evidentiary support for such an allegation is a different issue, one better addressed in a motion for summary judgment rather than a Rule 12(b)(6) motion.

This court has held that pay inequality and hostile work environment claims can be the source of contractual claims under § 1981, the statute no longer being limited to discriminatory hiring decisions, but rather being applicable to all phases of the contractual relationship. Lakshman v. Univ. of Me. System, 328 F. Supp. 2d 92, 110 & n.25 (D. Me. 2004). Furthermore claims brought pursuant to § 1981 are subject to a four-year statute of limitations and thus Roundtree's complaint would be timely, at least as to the second half of the 2003-2004 school year. Id. at 110.

    5. Roundtree's Motion for Summary Judgment and the Other Pending Motions

Roundtree has filed a motion for summary judgment on all of his claims (Doc. No. 17). In order to obtain affirmative relief on his own claims through a summary judgment motion, Roundtree must be able to establish that there are no material factual disputes standing in the way of judgment in his favor. In order to demonstrate that no factual disputes exist, Roundtree is required to file a statement of material facts that sets forth all of the material facts essential to a judgment in his favor. D. Me. Loc. R. 56(b), (f); see also Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the mandatory procedure for establishing factual predicates needed to support or overcome a summary judgment motion); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56). Before any individual statement could be treated as undisputed, Roundtree would have to support it with a citation to record materials capable of supporting the requested finding or the defendants would have to admit the statement. Fed. R. Civ. P. 56(c); D. Me. Loc.

R. 56(f). In this case Roundtree filed a statement of material facts to support his motion for summary judgment, but he did not support his individual statements with record citations. Additionally, the defendants have disputed his assertions and they have cited evidence supporting their opposing statements. Because they are the non-movants, all evidentiary disputes are resolved in their favor, P. R. Elec. Power Auth. v. Action Refund, 515 F.3d 57, 62 (1st Cir. 2008), which effectively precludes summary judgment from entering on Roundtree's motion.

## Recommendation on Pending Motions

Based upon the foregoing, I recommend the court grant the motion to dismiss brought by the Fryeburg Academy Teachers Association and James St. Pierre (Doc. No. 14). I further recommend the court deny Roundtree's motion for summary judgment against all defendants (Doc. No. 17). I also recommend that the court grant in part and deny in part the motion to dismiss (Doc. No. 10) filed by Fryeburg Academy, Fryeburg Academy Board of Trustees, Daniel G. Lee, and David B. Sturdevant, dismissing all claims against all of the named defendants except for the claims brought pursuant 42 U.S.C. § 1981.

## Additional Procedural Recommendation

As for the remaining four motions filed by Roundtree that have been held in abeyance pending this round of motions, I would recommend that the Court order that the plaintiff's motion for summary judgment at Doc. No. 39 be stricken as a duplicative pleading not authorized under Local Rule 56, thereby granting the motion to strike at Doc. No. 40. I also recommend that the motion for summary judgment at Doc. No. 23 be denied for the same reasons set forth in this recommendation as to Doc. No. 17. As to Doc. No. 37, the cross-motion for summary judgment filed by the Academy defendants, if the court adopts this recommended decision, the stay of briefing on that motion will be vacated and Roundtree will have 21 days

from that date to file his response to the Academy defendants' motion for summary judgment and then they will have the normal reply time. Roundtree is now on notice that his response to the pending motion must comply with Local Rule 56 and, to the extent he denies any of the statements of fact put forth by the defendants or wishes to set forth his own statement of additional material facts, his denial must be supported by record citations to material of evidentiary quality. If this recommendation is affirmed, the defendants may voluntarily dismiss without prejudice the pending cross-motion for summary judgment and file a new motion that is focused on only the one remaining claim. If they intend to proceed in this fashion, they should withdraw the pending cross-motion within 3 days of an order affirming this recommended decision in order to avoid an unnecessary response from plaintiff.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed without ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 5, 2008